1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE YANG,<br><br>     Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>     Defendant. | 1:04-CV-5973-SMS<br><br>DECISION AND ORDER DENYING<br>PLAINTIFF'S SOCIAL SECURITY<br>COMPLAINT (Doc. 1)<br><br>ORDER DIRECTING THE CLERK TO<br>ENTER JUDGMENT FOR DEFENDANT JO<br>ANNE B. BARNHART AND AGAINST<br>PLAINTIFF LEE YANG |

Plaintiff is proceeding with counsel and is seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying an application for benefits. By order dated December 27, 2004, Judge Robert E. Coyle reassigned this case to the undersigned Magistrate Judge because both parties had consented to the Magistrate's jurisdiction to conduct all proceedings, including ordering the entry of judgment, pursuant to 28 U.S.C. § 636(c). The matter is currently before the Court on the parties' briefs, which have been submitted without oral argument.

## PRIOR PROCEEDINGS

On November 15, 2001, or December 3, 2001, Plaintiff

1

applied for Supplemental Security Income (SSI), alleging disability since March 1, 1998, due to inability to sleep due to nightmares and flashbacks of war and killing, high blood pressure, constant migraines and back pains and tiredness and dizziness, hepatitis B, and constant noise in his ears. (Tr. 69-87, 16.) After Plaintiff's claim was denied initially and on reconsideration, Plaintiff requested, and appeared at, a hearing before the Honorable James P. Berry, Administrative Law Judge (ALJ) of the Social Security Administration (SSA), on August 12, 2003. Plaintiff appeared with an attorney and testified with the assistance of an interpreter before the ALJ. On September 16, 2003, the ALJ denied Plaintiff's application for benefits. (Id. at 16-29.) Plaintiff appealed the ALJ's decision to the Appeals Council and submitted new evidence. (Tr. 11, 339-50.) After the Appeals Council denied Plaintiff's request for review on May 17, 2004, Plaintiff filed the complaint in this action on July 15, 2004. (Id. at 5-7.) Briefing commenced on July 5, 2005, and was completed with the filing of Defendant's brief on September 19, 2005.

Plaintiff had previously filed SSI applications which were denied by an ALJ on April 26, 1994, and July 16, 1997. Plaintiff did not appeal these determinations but filed another application for SSI on March 20, 1998. This application was denied by an ALJ on November 23, 1999, and the Appeals Council denied Plaintiff's rerequest for review on April 26, 2001. Plaintiff did not appeal this determination. (Tr. 16-17.)

ADMINISTRATIVE FINDINGS

The ALJ stated that pursuant to Chavez v. Bowen, 844 F.2d

2

691 (9th Cir. 1988), there was a continuing presumption of
disability from the decision of November 23, 1999 (Tr. 35-41),
which had become final and binding when the Appeals Council
denied Plaintiff's request for review. (Tr. 17.) The previous
decision was that Plaintiff had no severely disabling physical
impairment; had severe depression but was able to sustain simple,
repetitive tasks (SRT) in an eight-hour workday; could perform
his past relevant work of dishwashing; and alternatively was not
disabled when Rule 204.00 was used as a framework. (Tr. 17.)

The ALJ concluded that Plaintiff's new impairment of
hepatitis B was not severe. As to a worsening of Plaintiff's
circumstances, the ALJ concluded that Plaintiff's depression was
severe but did not equal a listed impairment and had not
significantly deteriorated; his back pain, hypertension, ringing
in the ears, and migraines were not severe. Plaintiff's testimony
with regard to the frequency and severity of symptoms was not
credible. Plaintiff retained the residual functional capacity
(RFC) to perform a full range of exertion from sedentary to heavy
levels, including lifting and carrying 100 pounds occasionally
and fifty pounds frequently; stand, walk and sit for six to eight
hours each; he could perform simple, repetitive tasks, and thus
could understand, remember, and carry out simple job instructions
for one to two-step tasking, interact with supervisors, report
for work reliably, and perform competitively and productively;
and he could maintain attention, concentration, persistence, and
pace. He was moderately limited in the ability to understand,
remember, and carry out detailed instructions. He could relate to
and interact with others as well as adhere to safety rules. His

3

1   limitations did not significantly erode the scope of unskilled

2   work available to him. He could perform his past relevant work of

3   dishwasher as generally performed in the national economy;

4   alternatively, he could perform the unskilled work of a

5   production worker and bottle line hand packer, positions which

6   existed in significant numbers in California and nationally.

7   Using Rule 204.00 as a framework, Plaintiff was not disabled.

8        In summary, the ALJ concluded that Plaintiff had not

9   rebutted the presumption of changed circumstances by

10  demonstrating a change in age category, an increase in the

11  severity of the impairments, or the existence of an impairment

12  not previously considered.

13                        FACTS[1]

14       I. Background Medical History

15       Plaintiff initially sought treatment from Fresno County

16  Department of Mental Health ("FCMH") for alleged mental

17  impairments in December 1995 (Tr. 322-25). At that time,

18  Plaintiff alleged that he had been depressed for fifteen years

19  (Tr. 323). He also alleged injuring his back while working for a

20  manufacturing organization in Laos (Tr. 323). He denied suicidal

21  and homicidal ideation, intent, and plan (Tr. 323, 325). He

22  stated that there was no family psychiatric history (Tr. 323).

23  Plaintiff supported his five children through AFDC (Tr. 323).

24  Plaintiff asked about SSI (Tr. 323, 324). He denied auditory and

25  visual hallucinations ("AH" and "VH") (Tr. 325). There was no

26  evidence of abnormality on the mental status exam ("MSE"), except

27  _____

28       [1] Plaintiff's brief did not contain a formal statement of facts. This statement is derived from the statement in
    Defendant's brief.

for depressed mood (Tr. 325). The diagnosis was depressive
disorder, not otherwise specified ("NOS"). Global assessment of
functioning ("GAF") was 60 (Tr. 324). The clinician noted that
Plaintiff did not meet the criteria for "5150" (Tr. 324).

Plaintiff later admitted that he worked at a
restaurant from 1995 through 1997; however, he testified that he
only worked for six months in 1997. (Tr. 182, 360-61.)

A clinician ("MFCC") evaluated Plaintiff on January 10, 1996
(Tr. 298-300). Plaintiff then alleged auditory hallucinations
since 1993 (Tr. 299). He also alleged suicidal and homicidal
ideation since 1993 (Tr. 299, 300). Plaintiff admitted he did not
report these alleged symptoms before (Tr. 300). The clinician
opined that Plaintiff did not meet "5150" criteria, but called
Plaintiff's spouse and advised her to "get rid of the gun" (Tr.
298).

A psychologist and a licensed clinical social worker
("LCSW") evaluated Plaintiff in late January 1996 (Tr. 314-21).
The chart indicated that Plaintiff was rather vague about the
onset of his alleged symptoms (Tr. 315). Plaintiff stated that he
got depressive symptoms at work six months earlier (Tr. 315,
317). He alleged his sleep was interrupted by nightmares of war
and other symptoms related to allegedly witnessing war in
Southeast Asia (Tr. 315, 317). Plaintiff complained of
vague suicidal ideation (Tr. 315, 317). He denied hallucinations
(Tr. 317). The MSE was otherwise unremarkable, except for
depressed mood (Tr. 316-17). The clinician opined that
Plaintiff's allegedly impaired functioning might be the result of
a back injury while working in this country and difficulties

1  finding meaningful work since then (Tr. 317). The diagnosis was
2  depressive disorder NOS; the GAF was 50 (Tr. 318).

3      A February 1996 report contains a somewhat different account
4  of Plaintiff's alleged illness (Tr. 307). He alleged injuring
5  his back carrying fifty kilogram bags of rice in Laos in 1983,
6  and alleged he had been hospitalized for two months (Tr. 307,
7  309). However, he also testified that he fled Laos in 1975. (Tr.
8  363.) He alleged that when he came to America in 1991, he had
9  back pain, headaches, dizziness, poor sleep, instability, and
10 anger outbursts (Tr. 307, 309). He alleged more suicidal
11 thoughts in the last six months because of alleged pain (Tr.
12 307). Plaintiff's spouse allegedly took all sharp objects away
13 (Tr. 309). Plaintiff again alleged dreams about war (Tr. 307).
14 He said that he had joined the anticommunist forces for two
15 years, and then joined the communist regime (Tr. 308). He
16 allegedly escaped to Thailand in 1986 (Tr. 308). The diagnosis
17 was major depressive disorder, and post-traumatic stress disorder
18 ("PTSD"); the GAF was 45 (Tr. 310).

19     Plaintiff subsequently received treatment from FCMH through
20 February 1997 (Tr. 255-96). A May 1997 discharge document from
21 FCMH indicated that he had made some progress in treatment (Tr.
22 255). Plaintiff apparently indicated that he had no need for
23 therapy because he was seeing a private physician (Tr. 255).
24 Hence, therapy was terminated (Tr. 255).

25     Plaintiff's second SSI application was denied in
26 July 1997 (Tr. 16). He filed his third SSI application on or
27 about March 18, 1998 (Tr. 16, 37). He sought treatment from FCMH
28 on March 19, 1998 (Tr. 250-54).

1    Plaintiff alleged worsening symptoms since February (Tr.
2  251). The MSE was unremarkable, except that Plaintiff stated he
3  had suicidal ideation, saying it was easy to find a way - gun,
4  knife, or hanging (Tr. 252). The social worker who interviewed
5  him opined that he did not meet "5150" criteria (Tr. 250, 253).
6  The diagnosis was single episode major depression, without
7  psychotic features; the GAF was 45 (Tr. 244, 254). PTSD was added
8  later (Tr. 244, 250). Individual therapy was arranged (Tr. 248).
9  Several attempts by a case manager to visit Plaintiff at home
10  were unsuccessful because Plaintiff was not at home (Tr. 249).

11    Group therapy was attempted beginning in April 1999 (Tr.
12  218). Plaintiff did not appear for any group therapy sessions
13  until May (Tr. 209, 210-14, 216). He did not attend subsequently
14  scheduled sessions (Tr. 203-206). His case was closed July 20,
15  1999 for lack of attendance (Tr. 202).

16    Apparently, there were two ALJ hearings on Plaintiff's third
17  SSI application (Tr. 37-38). The ALJ issued a decision denying
18  that application on November 23, 1999 (Tr. 17, 38-47). The ALJ
19  found that Plaintiff had a "severe" mental impairment (Tr. 43,
20  45-47). The ALJ found that this impairment did not meet or equal
21  any Listing (Tr. 42, 43, 47). The ALJ noted inconsistencies
22  which eroded Plaintiff's credibility, and stated that he was left
23  with the impression that Plaintiff "changes his story depending
24  on his audience" (Tr. 40-41). The ALJ found that Plaintiff had
25  the RFC to perform simple repetitive tasks on a sustained basis
26  (Tr. 42, 43). At sequential evaluation step four, the ALJ found
27  that Plaintiff could perform his past work as a dishwasher;
28  alternatively, at step five, the ALJ found that Plaintiff could

1  perform other work (Tr. 42-43, 44). Thus, the ALJ found
2  Plaintiff not disabled (Tr. 43, 44).

3       II. <u>Medical History Pertaining to the Present Application</u>
4       Plaintiff filed the SSI application at issue here on
5  November 15, 2001 (Tr. 16, 69-78). Medical evidence pertaining
6  to this application includes the following exhibits:

7       Exhibit 1F, dated April 8, 2002, and signed by state agency
8  reviewer Ronald Moore, M.D., indicated that <u>Chavez</u> applied,
9  because there was no evidence of changed circumstances, and no
10 new material evidence (Tr. 132). Plaintiff's physical condition
11 was non-severe (Tr. 132). This conclusion was subsequently
12 affirmed by another doctor (Tr. 173-74).

13      Exhibit 2F, dated April 9, 2002, was signed by LCSW Linda
14 Anderson (Tr. 133-34). Ms. Anderson stated that Plaintiff had
15 dysthymia (Tr. 133). She indicated that Plaintiff talked about
16 wanting to kill himself (Tr. 133). She opined that Plaintiff
17 would have difficulty focusing and completing simple tasks;
18 could not maintain concentration for two-hour periods; could not
19 sustain an ordinary routine without supervision; and could not
20 handle basic work responsibilities; he could manage money (Tr.
21 134).

22      Exhibit 3F is a report dated May 13, 2002, and signed by
23 Shireen Damania, M.D. (Tr. 135-41). She indicated that she had
24 reviewed Ms. Anderson's report (Tr. 135). Dr. Damania apparently
25 talked to both Plaintiff and his spouse and noted some
26 inconsistencies in their stories, e.g., concerning whether the
27 spouse was going to school (Tr. 136). She noted that Plaintiff
28 was angry and argumentative when asked why he was not taking any

23

medication for his alleged emotional problems (Tr. 136).
Plaintiff said he was thinking of killing himself, and he
produced a rope (Tr. 136, 137). Dr. Damania told Plaintiff's
spouse that she would call the police on a "5150" because
Plaintiff was a danger to himself (Tr. 137). The spouse
apparently was not concerned, saying that the family ignored
Plaintiff when he did this (Tr. 137). Dr. Damania's report
indicated that Plaintiff did not cooperate with testing of his
orientation and memory. There was no evidence of hallucinations
or delusions (Tr. 137). Plaintiff's mood was labile (Tr. 137).
Dr. Damania stated that impulse control, frustration tolerance,
insight, and judgment were impaired (Tr. 137). She was unable to
learn about Plaintiff's daily activities (Tr. 137).

　　　After the interview, Dr. Damania tried to contact Ms.
Anderson (Tr. 138). Ms. Anderson apparently contradicted her own
report and stated that Plaintiff had not talked about killing
himself (Tr. 133, 135, 138). Dr. Damania later spoke to
Plaintiff's "case manager," who stated that Plaintiff was not
verbalizing any thoughts that mandated a "5150" (Tr. 138). Dr.
Damania also contacted the Social Security field office (Tr.
139). Dr. Damania indicated that there was a possibility
Plaintiff's behavior was manipulative (Tr. 139). Dr. Damania
also called 911 (Tr. 140). She was later informed that Plaintiff
seemed fine and denied suicidal or homicidal ideation (Tr. 141).

　　　Dr. Damania diagnosed depressive disorder NOS; the GAF was
50 (Tr. 139). She opined that Plaintiff would not be able to
handle his own funds judiciously in his best interest (Tr. 139;
but see Tr. 142). Based mostly on Ms. Anderson's report, Dr.

Damania opined that Plaintiff could understand, carry out, and remember simple instructions; however, Plaintiff could not respond appropriately to coworkers, supervisors, and the public, respond appropriately to usual work situations, including safety and attendance, or deal with changes in a routine work setting (Tr. 139).

State agency reviewer Glenn Ikawa, M.D., reviewed the evidence on July 24, 2002 (Tr. 143-63). Dr. Ikawa assessed an affective disorder (Tr. 143, 146). He opined that Plaintiff's functional limitations were not severe (Tr. 153). Further, Dr. Ikawa opined that by April 2003, Plaintiff's ability to understand and remember very short and simple instructions would not be not significantly impaired (Tr. 157). Plaintiff could carry out such instructions, maintain attention and concentration for extended periods, maintain attendance, sustain an ordinary work routine, work with others, and make simple work-related decisions without significant limitation (Tr. 157). This opinion was predicated on continued treatment (Tr. 159).

On October 3, 2003, this opinion was affirmed by psychiatrist Archimedes Garcia, M.D. (Tr. 159).

Chin Savanapridi, M.D., submitted Exhibit 6F to the state agency in September 2002 (Tr. 164-71). Dr. Savanapridi's clinic notes indicated treatment of hypertension ("HTN") from August 2001 through June 2002 (Tr. 165-71). An April 2001 electrocardiogram ("EKG") was within normal limits ("WNL") (Tr. 170). Dr. Savanapridi's clinic notes showed that Plaintiff was generally alert and oriented; there was no evidence of psychiatric problems (Tr. 165-69, 171).

1    Plaintiff returned to FCMH on July 16, 2002 (Tr. 196-201).
2  Plaintiff stated that he saw killings and was in combat
3  situations in 1979-80 (Tr. 197). He denied suicidal and
4  homicidal ideation but alleged auditory hallucinations
5  (Tr. 198) He admitted working for six months in 1997 (Tr. 199).
6  Mental status examination revealed depressed mood and flat affect
7  (Tr. 199). The diagnosis was PTSD; the GAF was 55 (Tr. 200).
8  Medications were prescribed (Tr. 200). Plaintiff did not improve,
9  and in September 2002, his medications were adjusted (Tr. 194).
10 Poor compliance with medication was noted in November and
11 December 2002 (Tr. 192-93).

12   In March 2003, Plaintiff admitted that medication helped him
13 sleep. Alternative diagnoses were suggested based on an alleged
14 family history of schizophrenia (Tr. 188; but cf. Tr. 323).
15 Plaintiff refused to cooperate with a mental status examination
16 on March 25, 2003 (Tr. 184). He admitted working at a restaurant
17 from 1995 to 1997 and alleged he was fired because he forgot to
18 turn off the gas (Tr. 182, 186). He stated that he had attended a
19 group affiliated with Ms. Anderson; apparently the group was no
20 longer extant (Tr. 181). By April 1, 2003, Plaintiff admitted
21 feeling better (Tr. 179). He also admitted feeling better in June
22 2003 (Tr. 177).

23   Exhibit 10F was submitted to the ALJ in October 2003 by V.S.
24 Kaleka, M.D. (Tr. 329-34). From October 2002 through February
25 2003, Dr. Kaleka noted Plaintiff's subjective complaints, and his
26 blood pressure in writing; he also circled the words
27 "anxious/depression;" he diagnosed HTN and depression/PTSD (Tr.
28 334-29). Dr. Kaleka prescribed various medications (Tr. 329-34).

On February 4, 2003, Plaintiff told Dr. Kaleka he had hepatitis B (Tr. 329).

Exhibit 11F was submitted to the ALJ after the August 12, 2003 hearing (Tr. 335-38, 344-47 [copy]). Psychiatrist Yelena Sirbiladze, M.D. stated therein that Plaintiff's treatment at FCMH continued (Tr. 335). Diagnoses were major depression with psychotic features and PTSD (Tr. 335). She indicated partial response to treatment (Tr. 335). Further, she opined that Plaintiff's ability to make occupational adjustments was at best fair, but mostly poor; his ability to make performance adjustments was poor; his ability to make personal/social adjustments ranged from good to poor (Tr. 336-37).

Exhibit AC-1, dated August 2003, was submitted to the Appeals Council in April 2004 (Tr. 339-43, 353-54). Dr. Kaleka stated that Plaintiff's blood pressure was under control and that Plaintiff's mental status was being followed by "Dr. Soliman" (Tr. 339). Dr. Kaleka opined that Plaintiff had no physical impairment (Tr. 340-43).

Exhibit AC-2 duplicates Exhibit 11F (Tr. 335-39, 344-47.) Exhibit AC-3 contains arguments by Plaintiff's attorney to the Appeals Council (Tr. 348-50).

III. Testimony

A. Plaintiff

Plaintiff testified that he was born June 15, 1968 (Tr. 355). He had ten children (Tr. 355). He testified that his spouse had started adult school in 1993; she spent four-to-eight hours in school, five days each week (Tr. 355-56). Plaintiff's youngest child was eleven months old (Tr. 356). Plaintiff

testified that someone from welfare took care of the children while his spouse was in school because he was not trusted (Tr. 356). However, Plaintiff also testified that he helped supervise the children (Tr. 356-57; 100).

Plaintiff had a driver's license (Tr. 357). He visited his father and drove to the doctor (Tr. 357-58). He admitted having attended adult school for two years (Tr. 358-59). He could understand and speak some English (Tr. 371). Plaintiff admitted working as a dishwasher for six months in 1997 (Tr. 359-61). He testified that he was fired (Tr. 361; but see 40, 104, 240). He alleged that he forgot things very easily, and that he had nightmares (Tr. 362).

Plaintiff testified that he fled Laos in 1975, when he was a small boy of about seven years of age; however, he also had previously claimed that he was captured by communists at age eleven (Tr. 363, 39). Plaintiff alleged that his problems began a long time ago and had gotten worse since 1998 (Tr. 363-64).

Plaintiff said the only people he talked to were his doctors, Yelena [Sirbiladze], and Dr. Kaleka (Tr. 364-65). Plaintiff said that life was not worth living (Tr. 366). He took medication for his alleged mental problems and HTN (Tr. 366).

Plaintiff testified that he was forgetful (Tr. 366-67). He testified that he sometime helped his spouse with cooking but alleged that he did not always finish his tasks (Tr. 367). He did no other housework (Tr. 367-68). He had gone to the Hmong New Year celebration in 2003 (Tr. 368). He went to parent-teacher conferences at school (Tr. 370). He had friends and sometimes went to small gatherings (Tr. 372).

1          B. <u>Vocational Expert</u>

2      Vocational expert ("VE") Judith Najarian testified (Tr. 67,

3  373-78). The VE testified that a hypothetical person who

4  retained the ability to perform simple tasks, the ability to

5  maintain concentration, persistence, and pace, the ability to

6  interact with others, and adhere to safety rules could perform

7  Plaintiff's past work (T. 374-75). Alternatively, he could

8  perform thousands of other jobs (Tr. 375-77). An individual who

9  had difficulty performing even simple, repetitive tasks, and

10 other mental limitations, could not perform any of those jobs

11 (Tr. 377-78).

12              SCOPE AND STANDARD OF REVIEW

13     Congress has provided a limited scope of judicial review of

14 the Commissioner's decision to deny benefits under the Act. In

15 reviewing findings of fact with respect to such determinations,

16 the Court must determine whether the decision of the Commissioner

17 is supported by substantial evidence. 42 U.S.C. § 405(g).

18 Substantial evidence means "more than a mere scintilla,"

19 <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971), but less than a

20 preponderance, <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119, n. 10

21 (9th Cir. 1975). It is "such relevant evidence as a reasonable

22 mind might accept as adequate to support a conclusion."

23 <u>Richardson</u>, 402 U.S. at 401. The Court must consider the record

24 as a whole, weighing both the evidence that supports and the

25 evidence that detracts from the Commissioner's conclusion; it may

26 not simply isolate a portion of evidence that supports the

27 decision. <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).

28 It is immaterial that the evidence would support a finding

                          14

1  contrary to that reached by the Commissioner; the determination

2  of the Commissioner as to a factual matter will stand if

3  supported by substantial evidence because it is the

4  Commissioner's job, and not the Court's, to resolve conflicts in

5  the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th

6  Cir. 1975).

7      In weighing the evidence and making findings, the

8  Commissioner must apply the proper legal standards. Burkhart v.

9  Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

10  review the whole record and uphold the Commissioner's

11  determination that the claimant is not disabled if the

12  Commissioner applied the proper legal standards, and if the

13  Commissioner's findings are supported by substantial evidence.

14  See, Sanchez v. Secretary of Health and Human Services, 812 F.2d

15  509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If

16  the Court concludes that the ALJ did not use the proper legal

17  standard, the matter will be remanded to permit application of

18  the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th

19  Cir. 1987).

20                          ANALYSIS

21      I. Disability

22      In order to qualify for benefits, a claimant must establish

23  that she is unable to engage in substantial gainful activity due

24  to a medically determinable physical or mental impairment which

25  has lasted or can be expected to last for a continuous period of

26  not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A

27  claimant must demonstrate a physical or mental impairment of such

28  severity that the claimant is not only unable to do the

claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as his age, education and last fifteen years of work experience. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations[2] provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities; 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations; 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work; and 5) whether on the basis of the

_____

[2] All references are to the 2003 version of the Code of Federal Regulations unless otherwise stated.

16

1  applicant's age, education, work experience, and residual

2  functional capacity, the applicant can perform any other gainful

3  and substantial work within the economy. See 20 C.F.R. § 416.920.

4      II. Bias of the ALJ

5      Plaintiff argues that the ALJ was biased.

6      Plaintiff incorrectly states that there is no review of

7  ALJ's who are biased; to the contrary, 20 C.F.R. § 416.1440

8  expressly provides that an ALJ shall not conduct a hearing if he

9  or she is prejudiced or partial with respect to any party or has

10  any interest in the matter pending for decision; further, if one

11  objects to the ALJ, one must notify the ALJ at the earliest

12  opportunity, and the ALJ shall consider the objections and decide

13  whether to proceed or withdraw. If an ALJ declines to withdraw,

14  the claimant may present the objections to the Appeals Council as

15  reasons why the hearing decision should be revised or a new

16  hearing be held before another ALJ. There is no indication that

17  Plaintiff attempted to invoke this regulation.

18      Plaintiff points to facts outside the record to support the

19  claim of bias. Some of the facts concern asserted conduct of the

20  ALJ in other cases which are not identified; others relate to the

21  rate at which the ALJ approves disability claims. Some of the

22  claims are entirely without citation to asserted facts, such as

23  the statement that the ALJ is biased against Southeast Asian and

24  African American claimants, which Plaintiff claims can be proven

25  only by remand with immunity to SSA employees. However, Plaintiff

26  appears to concede correctly that none of the asserted facts

27  stated satisfies the requirements in the case law for remand or

28  reversal. (Brief p. 4.)

1    Quasi-judicial officers, such as administrative law judges,
2  are presumed to be unbiased, but the presumption may be rebutted
3  by a showing of conflict of interest or some other specific
4  reason for disqualification. Rollins v. Massanari, 261 F.3d 853,
5  857-58 (9th Cir. 2001) (holding that expressions of impatience,
6  annoyance, and even anger did not establish bias). In order to
7  establish bias, one must show that the ALJ's behavior, in the
8  context of the whole case, was so extreme as to display clear
9  inability to render fair judgment. Id. at 858 (quoting Liteky v.
10 United States, 510 US. 540, 555-56 (1994)).

11   Plaintiff's asserted proof does not amount to evidence; its
12 substance and context are not developed in the record.
13 Accordingly, the Court does not consider Plaintiff's extra-record
14 assertions to be established facts of evidentiary value in this
15 analysis.

16   However, even if the Court were to accept Plaintiff's extra-
17 record assertion regarding the pendency at an uncertain time of
18 claims against the ALJ, this does not establish bias. Cf. Bunnell
19 v. Barnhart, 336 F.3d 1112, 1114 (9th Cir. 2003) (holding that the
20 standard of appearance of impropriety is inapplicable to
21 administrative law judges, who are governed by regulations
22 requiring actual bias, and further holding that Plaintiff's
23 counsel's having sued the ALJ in the past did not demonstrate
24 actual bias where a motion to recuse had been denied).

25   Further, even if the Court were to accept Plaintiff's
26 counsel's extra-record assertions of a high statistical showing
27 of unfavorable rulings, this would not demonstrate bias. In re
28 Beverly Hills Bancorp, 752 F.2d 1334, 1340 (9th Cir. 1984).

18

1   Plaintiff also argues that the AJ refused due process to

2   Plaintiff by taking his case a second time under a new

3   application after having denied Plaintiff's first claim. (Tr. 29,

4   44.) An ALJ's having ruled against a claimant in the past and

5   vigorous examination of a witness by the ALJ do not demonstrate

6   bias. Alfano v. Bowen, 1988 WL 23542 at *1 (E.D.N.Y.).

7   In summary, the record here does not reveal any specific

8   basis for disqualification or any basis for a conclusion that the

9   ALJ was unable to render fair judgment. The Court rejects

10  Plaintiff's assertion that the ALJ was biased.

11      III.  Misapplication of Chavez v. Bowen

12  Plaintiff argues that the ALJ's finding of an absence of

13  changed circumstances is inconsistent with a statement made in

14  the prior decision regarding Plaintiff's condition worsening.

15  Plaintiff cites to Tr. 42 and 379, apparently in an effort to

16  establish that the ALJ credited the opinion of a Dr. Ware which

17  presumably showed some worsening of Plaintiff's condition at a

18  pertinent time. However, the citation shows that the ALJ

19  expressly discredited Dr. Ware's assessments because they were

20  equivocal and thus not entitled to much weight. (Tr. 42.)

21  Plaintiff claims that the decision under review was affected

22  by the previous decision, and that the ALJ made a bad decision in

23  the prior case. However, the prior decision was res judicata.

24  Administrative decisions on the merits, including the findings

25  therein, which become final as a result of a claimant's failure

26  to seek administrative review after notice of an adverse

27  decision, are binding pursuant to the principal of res judicata.

28  Taylor v. Heckler, 765 F.2d 872, 876 (9th Cir. 1985). Plaintiff

does not claim that she exhausted her administrative remedies or demonstrate that the principle of administrative finality is inapplicable.

Plaintiff's overarching contentions that the ALJ in the decision presently under review came to the wrong conclusions with respect to the evidence and the ultimate issue of whether Plaintiff had demonstrated a change of circumstances will be addressed in the analysis that follows.

IV. <u>Reopening</u>

Plaintiff orally requested that the ALJ reopen the initial claim as of the date of April 13, 1999. (Tr. 379.) The ALJ did not reopen the proceeding. Plaintiff argues that the ALJ should have reopened the matter because the evidence overwhelmingly supports such a date of onset.

Regulations, and not statute, provide for additional consideration of a claim that has been subject to decision or determination. The agency may reopen the agency determination within specified time limits after the date of initial determination, twelve months as a matter of right and four years "upon a finding of good cause," which exists if new material evidence is provided or specific errors are discovered. 20 C.F.R. § 416.1487-416.1489 (SSI). This Court is without jurisdiction to order a case reopened or to review a denial of a request to reopen in the absence of a challenge based on constitutional grounds. <u>Califano v. Sanders</u>, 430 U.S. 99, 104-08 (1977). The Court has previously rejected Plaintiff's claim of a denial of due process based on bias of the ALJ. Plaintiff has not demonstrated a basis for this Court's reopening.

1       V. <u>The ALJ's Evaluation of the Medical Evidence</u>

2       Plaintiff challenges the ALJ's evaluation of the medical

3  evidence, including the licensed clinical social workers Anderson

4  and Boe, LMFT Grainer, Dr. Damania, Dr. Sirbiladze, and Dr.

5  Kaleka.

6       An ALJ may disregard a treating physician's opinion that is

7  controverted by other opinions only by setting forth specific,

8  legitimate reasons for doing so that are based on substantial

9  evidence in the record. <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 762 (9th

10 Cir. 1989). This burden is met by stating a detailed and thorough

11 summary of the facts and conflicting clinical evidence, stating

12 the interpretation of the evidence, and making findings. <u>Cotton</u>

13 <u>v. Bowen</u>, 799 F.2d 1403, 1408 (9th Cir 1986). However, if the

14 medical opinion of a claimant's treating physician is

15 uncontroverted, then an ALJ must present clear and convincing

16 specific reasons, supported by substantial evidence in the

17 record, for rejecting the uncontroverted medical opinion of a

18 claimant's treating physician. <u>Holohan v. Massanari</u>, 246 F.3d

19 1195, 1203 (9th Cir. 2001). It is insufficient to rely on the

20 inability of the physician to support the findings with objective

21 laboratory findings because disability may be proved by medically

22 acceptable clinical diagnoses as well as by objective laboratory

23 findings. <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 762 (9th Cir. 1989). A

24 failure to set forth a reasoned rationale for disregarding a

25 particular treating physician's findings is legal error. <u>Cotton</u>

26 <u>v. Bowen</u>, 799 F.2d at 1408.

27      Likewise, the medical opinion of a nontreating doctor may be

28 relied upon instead of that of a treating physician only if the

ALJ provides specific and legitimate reasons supported by
substantial evidence in the record. <u>Holohan v. Massanari</u>, 246
F.3d 1195, 1202 (9th Cir. 2001) (citing <u>Lester v. Chater</u>, 81 F.3d
821, 830 (9th Cir. 1995)). The contradictory opinion of a
nontreating but examining physician constitutes substantial
evidence, and may be relied upon instead of that of a treating
physician, where it is based on independent clinical findings
that differ from those of the treating physician. <u>Andrews v.
Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995). The opinion of a
nontreating, nonexamining physician can amount to substantial
evidence as long as it is supported by other evidence in the
record, such as the opinions of other examining and consulting
physicians, which are in turn based on independent clinical
findings. <u>Andrews v. Shalala</u>, 53 F.3d at 1041.

     The ALJ noted the conflicting medical evidence concerning
Plaintiff's mental condition. He reviewed Plaintiff's treatment
and diagnosis by licensed clinical social worker (LCSW) Janice
Anderson in April 2002. (Tr. 19, 23.) The ALJ rejected the LCSW's
opinion of reduced functioning and subjective distress (see Tr.
133-34), but he gave little weight to it because the single
mental status examination report was not supported by any
progress notes. Substantial evidence supports this statement. It
is appropriate for an ALJ to consider the absence of supporting
findings, and the inconsistency of conclusions with the
physician's own findings, in rejecting a physician's opinion.
<u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432-33 (9th Cir. 1995); <u>Matney
v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir. 1992); <u>Magallanes v.
Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ also concluded

22

1 that the LCSW's report reflected observations but was not

2 entitled to significant probative weight as a report from a

3 recognized source. The ALJ's conclusion was legally correct. In

4 evaluating opinions, the SSA will consider opinions from

5 acceptable medical sources. 20 C.F.R. § 416.927(a). To the extent

6 relevant to the present case, acceptable medical sources for the

7 purposes of SSI determinations include licensed physicians and

8 licensed or certified psychologists. 20 C.F.R. § 416.913(a). The

9 ALJ properly concluded that Ms. Anderson was not an acceptable

10 medical source.

11     Finally, the ALJ rejected the LCSW's report because it was

12 brief and did not indicate that the claimant was prescribed any

13 psychotropic medication or how often the claimant received

14 treatment. It is appropriate for an ALJ to rely on an absence of

15 a longitudinal history in discounting an expert's opinion. <u>Cansio</u>

16 <u>v. Shalala</u>, 833 F.Supp. 764, 768 (C.D.CA 1993). A conclusory

17 opinion that is unsubstantiated by relevant medical documentation

18 may be rejected. <u>See</u> <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432-33

19 (9th Cir. 1995).

20     The Court finds the rejection of the LCSW's opinion to be

21 supported by the statement of specific and legitimate reasons

22 which are in turn supported by substantial evidence.

23     The ALJ noted the findings of psychiatrist Dr. Shireen

24 Damania, who performed a consultative examination of Plaintiff on

25 May 13, 2002, and who had reviewed a short form evaluation

26 completed by LCSW Anderson frfom April 9, 2002, which was the

27 only background information available. (Tr. 135-42.) Damania

28 concluded that Plaintiff was uncooperative and provided little

23

1  information, and that what information was provided came from the
2  clinical observations and from his wife. When Dr. Damania asked
3  why Plaintiff was not being medicated, Damania became alarmed by
4  Plaintiff's apparent nonverbal threat or reference to using a
5  jump rope to take his life; however, her contacts with both
6  Plaintiff's wife and with Plaintiff's treating LCSW reflected
7  that neither the wife nor the LCSW was concerned, and further
8  that the LCSW contradicted her own evaluation notes concerning
9  Plaintiff's always talking about killing himself. Dr. Damania
10 concluded that it would be difficult to ascertain whether
11 Plaintiff's behavior was partly manipulative. A follow-up 911
12 call initiated by Dr. Damania after contacting the family later
13 in the day of the exam resulted in feedback documented by Dr.
14 Damania to the effect that officer who had evaluated Plaintiff
15 had concluded that he was fine. Two days later, a communication
16 with Plaintiff's wife revealed that Plaintiff was fine.

17      The ALJ ascribed little weight to the report and conclusions
18 of Dr. Damania because Plaintiff was uncooperative, the
19 information on which it was based came largely from the LCSW, and
20 Dr. Damania herself reported that it was difficult to ascertain
21 whether or not Plaintiff's behavior was partly manipulative.
22 Substantial evidence supports these conclusions. The reliability
23 of the information from the LCSW and from Plaintiff was
24 questionable. As previously noted, the lack of supporting
25 information and documentation for an opinion is a legitimate
26 reason for rejecting an expert opinion.

27      The ALJ reviewed the records of Plaintiff's treatment at
28 Fresno County Mental Health Services. (Tr. 20, 23.) The records

span the period from December 1995 through July 2003; the assessments in the earlier portion of the period were generally from caseworkers who were not physicians or psychologists, but rather were LCSW's or licensed marriage and family counselors. (Tr. 176-324.) Plaintiff was treated without medications until 1999, when he was dismissed due to failure to attend group therapy. (Tr. 203.) Reference to the record reveals that the ALJ's characterization of the contents of the records was accurate. He noted that Plaintiff received no treatment for the three-year period from July 1999 through July 2002. (Tr. 202-03.) The ALJ also noted that the records from 2002 forward reflected no past psychiatric hospitalization or psychotropic medication, and a GAF of 55, indicating moderate symptoms or moderate difficulty in social or occupational functioning. (Tr. 20, 197-200.) Once Plaintiff was prescribed medications, the records reflected some questionable compliance or noncompliance. (Tr. 190-95.) Monthly medication reviews by a physician thereafter in 2003 revealed that Plaintiff's condition improved when Plaintiff was compliant with medications. The record supports the ALJ's reasoning that Plaintiff felt less anxious, slept better, had fewer flashbacks and nightmares, and was even noted by his family to have improved on the medication; he had some drowsiness in the morning after sleeping well. (Tr. 20, 23, 177, 179, 184.) In June 2003, Plaintiff looked brighter and had normal speech; he was still depressed, and his diagnosis of post-traumatic stress disorder (PTSD) remained in June 2003, but he had no symptoms and was improving. (Tr. 177.) Medications were being adjusted to address the dizziness side-effect. (Tr. 177.) By July 2003, the

diagnosis had changed to rule out PTSD. (Tr. 176.) The record
thus supports the ALJ's conclusion that records from this
treatment location indicate improvement, and not deterioration,
of Plaintiff's mental condition.

The ALJ rejected the opinion of treating physician Dr.
Yelena Sirbiladze, prepared three days following the hearing on
August 15, 2003, indicating that Plaintiff had depression and
PTSD, would be treated with medications and supportive therapy,
had a partial response to treatment, and an unknown prognosis.
(Tr. 335-38.). The ALJ reasoned that this opinion was not
supported by the progress records at mental health that reflected
that Plaintiff was improving. (Tr. 24.) This is a legitimate
reason and is supported by substantial evidence. The ALJ further
noted that the doctor's limitations far exceeded Plaintiff's own
testimony about his daily activities. (Tr. 24.) Dr. Sirbiladze
noted on the check-off form that Plaintiff had poor ability to
maintain attention or concentration, remember and carry out
simple job instructions, relate predictably in social situations,
and was prone to uncontrollable anxiety in social setting that
increased his depression and symptoms. (Tr. 336-38.) Plaintiff,
on the other hand, testified that he helped supervise three of
his children who were not school age, could drive and did drive
to visit family or the doctor; further, depending on whether he
was taking a specific medication, he could remember everything
sometimes, but sometimes he might forget to turn off the stove or
put a pot on the stove after he had turned it on; he admitted
that his medication helped temporarily and for a certain
percentage of the problem, and he stated that he had no side

1   effects. He visited the Hmong New Year twice during the year of
2   the hearing and stayed only an hour each time because lots of
3   noise increased his depression; one reason he did not do more
4   things like that was because it would result in spending money.
5   He saw his friends by having a small party or gathering with
6   them. (Tr. 356-58, 365-72.) The record thus supports the ALJ's
7   conclusion that the doctor's restrictions exceeded that to which
8   Plaintiff testified. It is permissible to rely on the Plaintiff's
9   testimony regarding his impairments in discrediting a treating
10  physician's opinion. <u>Fisher v. Schweiker</u>, 568 F.Supp. 900, 903
11  (N.D.Cal. 1983).

12      The ALJ noted records from V. S. Kaleka, M.D., Plaintiff's
13  treating physician, for six visits from October 2002 through
14  August 4, 2003, which contained complaints of not only physical
15  problems, but also insomnia, anxiety, depression, and nightmares,
16  and a diagnosis of depression and PTSD. (Tr. 329-334.) The ALJ
17  expressly rejected Kaleka's diagnosis of PTSD because the
18  diagnosis was based on check-off forms; further, the records
19  appeared to have been made and signed by someone other than the
20  doctor and then were okayed by the doctor. (<u>Id.</u>) The ALJ stated
21  that the diagnosis was not supported by substantial evidence;
22  further, Plaintiff received only conservative treatment for his
23  complaints of PTSD. (Tr. 24.) The record supports the ALJ's
24  reasoning. It is permissible for an ALJ to prefer an opinion
25  supported by specific clinical findings and an explanation
26  thereof over a check-off type of form lacking an explanation of
27  the basis for the conclusions. <u>Crane v. Shalala</u>, 76 F.3d 251, 253
28  (9th Cir. 1996) (citing <u>Murray v. Heckler</u>, 722 F.2d 499, 501 (9th

Cir. 1983)); see Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004). Likewise, the ALJ was entitled to rely on the lack of clinical findings to support the diagnosis.

Evidence brought before the Appeals Council included an additional report of Dr. Kaleka from August 20, 2003, in which the doctor stated that Plaintiff suffered insomnia, depression, anxiety, guilt feelings, change in mood, and nightmares, and thus suffered depression and PTSD; treatment was follow-up at mental health. (Tr. 339-43.) The Court notes that the clinical findings mentioned all appear to be symptoms subjectively reported by the Plaintiff. The ALJ concluded that the objective medical evidence did not establish disability; Plaintiff's testimony regarding the frequency and severity of symptoms was not credible. (Tr. 21.) Further, as is more fully discussed below, the ALJ concluded that Plaintiff's subjective allegations regarding the severity of his mental impairment and the extent of any functional limitations resulting therefrom were not credible because treatment by medication helped his symptoms, Plaintiff's daily activities were not severely restricted, and Plaintiff was not in distress and was alert and responsive to questions at the hearing. (Tr. 23-24.) The ALJ concluded that there the medical evidence did not convincingly show that Plaintiff could not function socially or occupationally. (Tr. 24.) Where a treating source's opinion is based largely on the Plaintiff's own subjective description of his or her symptoms, and the ALJ has discredited the Plaintiff's claim as to those subjective symptoms, the ALJ may reject the treating source's opinion. Fair v. Bowen, 885 F.2d 597, 605 (9th

1  Cir. 1989).

2      The ALJ expressly adopted the opinions of the state agency
3  physicians as being in line with the objective medical evidence.
4  (Tr. 24.) The opinions of Dr. Ikawa in July 2002 and Dr. Garcia
5  in October 2002 were that due to his depression, Plaintiff did
6  not have severe functional limitations and was only mildly
7  limited in maintaining social functioning; was only moderately
8  limited in understanding, remembering, and carrying out detailed
9  instructions but could understand, remember, and carry out simple
10  and short instructions; was only mildly restricted in maintaining
11  attention, concentration, persistence and pace; and could
12  maintain attendance and sustain an ordinary work routine while
13  working with others if Plaintiff continued his treatment. (Tr.
14  143-63, 159.) As previously detailed, this conclusion was
15  supported by the objective medical evidence of record.

16      The ALJ also relied on the change of the diagnosis at Fresno
17  County Mental Health from PTSD to rule out PTSD, which has been
18  previously detailed. Although there was medical evidence that
19  would have supported a conclusion that Plaintiff suffered from
20  PTSD, the ALJ rejected that evidence and instead relied on
21  substantial evidence in the record that supported his rejection.
22  The Court notes that it to the extent that medical evidence is
23  inconsistent or conflicting, it is the responsibility of the ALJ
24  to resolve any conflicts. Morgan v. Commissioner, 169 F.3d 595,
25  603 (9th Cir. 1999); Saelee v. Chater, 94 F.3d 520, 522 (9th Cir.
26  1996); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016,
27  1020 (9th Cir. 1992). Here, the ALJ stated specific and legitimate
28  reasons for concluding that Plaintiff had not established PTSD.

The ALJ concluded that the objective medical evidence failed to establish significant worsening of his mental impairments. The ALJ stated legitimate reasons supported by substantial evidence in the record to support this conclusion.

VI. <u>Development of the Medical Record and the Psychiatric Review Technique</u>

Plaintiff argues that the ALJ should have developed the mental health record with respect to Plaintiff's PTSD. The duty to develop the record arises where the record before the ALJ is ambiguous or inadequate to allow for proper evaluation of the evidence. 20 C.F.R. §§ 404.1512(e) and 416.912(e); <u>Mayes v. Massanari</u>, 262 F.3d 963, 968 (9th Cir. 2001).

Here, the ALJ was able to evaluate the medical opinions offered by Plaintiff. Plaintiff's symptoms were improving with medication, and the diagnosis of PTSD was based on subjective complaints of a plaintiff whose credibility had been rejected by the ALJ after a full analysis. Although there was some conflict or inconsistency of the evidence in the record, this was not an instance in which the record was inadequate to allow for proper evaluation of the evidence.

Plaintiff argues that the ALJ erred in failing to complete a psychiatric review technique form analysis. However, at the time of the ALJ's decision, 20 C.F.R. § 416.920a(e)(2) required only that the ALJ incorporate the pertinent findings and conclusions based on the technique in a way that showed significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairments. The regulation required

1  that the decision include a specific finding as to the degree of
2  limitation in each of the functional areas described in paragraph
3  416.920a(c). Id.

4       The ALJ here set forth the history in detail and expressly
5  concluded that Plaintiff had no restrictions involving daily
6  activities, maintaining social functioning, moderate difficulty
7  maintaining concentration, persistence, or pace, and one or two
8  episodes of decompensation. (Tr. 24.) The ALJ expressly concluded
9  that the evidence did not establish the presence of the "C"
10 criteria. (Id.) Thus, he did not fail to consider or articulate
11 the appropriate analysis.

12      VII. Plaintiff's Subjective Complaints

13      The existence and severity of a person's reaction to a
14 physical ailment, such as the existence and severity of pain, are
15 subjective phenomena, the extent of which cannot be objectively
16 measured. Byrnes v. Shalala, 60 F.3d 639, 642 (9th Cir. 1995). In
17 order to reject a claimant's subjective complaints, the ALJ must
18 provide specific, cogent reasons for the disbelief. Lester v.
19 Chater, 81 F.3d 821, 834 (9th Cir. 1995). Once the claimant
20 introduces medical evidence of an underlying impairment that
21 could reasonably be expected to produce some degree of the
22 subjective symptoms, the Commissioner may not discredit the
23 claimant's testimony as to subjective symptoms merely because
24 they are unsupported by objective evidence such as objective
25 medical findings. Id.; Smolen v. Chater, 80 F.3d 1273, 1282 (9th
26 Cir. 1996). Unless there is affirmative evidence tending to show
27 that the claimant is malingering, the reasons for rejecting the
28 claimant's testimony must be clear and convincing, and the ALJ

31

1  must set forth the rejection by identifying what testimony is not

2  credible and what evidence undermines the claimant's complaints.

3  <u>Lester v. Chater</u>, 81 F.3d at 834. The findings of the adjudicator

4  must be properly supported by the record and must be sufficiently

5  specific to allow a reviewing court to conclude that the

6  adjudicator rejected the claimant's testimony on permissible

7  grounds and did not arbitrarily discredit a claimant's testimony.

8  <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345-46; <u>Byrnes v. Shalala</u>, 60

9  F.3d at 641-42 (9th Cir. 1995); <u>see</u> 20 C.F.R. § 404.1529(c)

10 [disability] and 20 C.F.R. § 416.929(c) [supplemental security

11 income].

12      Social Security Ruling 96-7p directs the adjudicator to

13 consider not only objective medical evidence of signs, laboratory

14 findings, and medical opinions, but also the following factors

15 when assessing the credibility of an individual's statements:

16      1. The individual's daily activities;
        2. The location, duration, frequency, and intensity
17         of the individual's pain or other symptoms;
        3. Factors that precipitate and aggravate the symptoms;
18      4. The type, dosage, effectiveness, and adverse
           side effects of any medication for pain or other
19         symptoms;
        5. Treatment, other than medication, for relief of
20         pain or other symptoms;
        6. Any measures other than treatment used by the
21         individual to relieve the pain or other symptoms; and
        7. Any other factors concerning the individual's
22         functional limitations and restrictions due to
           pain or other symptoms.
23
   <u>See also Bunnell v. Sullivan</u>, 947 F.2d at 346.
24
        Plaintiff argues that the ALJ failed to review all seven
25
   criteria mentioned in Soc. Sec.Ruling 96-7p. However, it is
26
   established that where the evidence supporting an ALJ's rejection
27
   of a claimant's credibility is substantial, and where it
28

                                  32

1  demonstrates that the ALJ did not arbitrarily reject the

2  Plaintiff's testimony, the finding will be upheld even though the

3  finding is not as extensive as possible and does not consider all

4  possible factors. <u>Crane v. Shalala</u>, 76 F.3d 251, 254 (9th Cir.

5  1996) (where the AlJ's conclusion was based on the claimant's

6  daily activities, treating therapist's notes, and good response

7  to treatment); <u>Tidwell v. Apfel</u>, 161 F.3d 599, 602 (9th Cir. 1999)

8  (upholding an ALJ's rejection of a claimant's credibility based

9  on medical evidence, daily activities, and Plaintiff's testimony

10 that a medication aided intermittent pain).

11     Likewise, contrary to Plaintiff's argument, the ALJ reviewed

12 the Plaintiff's testimony. (Tr. 21-22.) Plaintiff contends that

13 the ALJ did not fully and fairly review the testimony. Plaintiff

14 asserts that the ALJ did not recite all of Plaintiff's

15 complaints; further, he ignored Plaintiff's testimony, and much

16 of it was misstated. Plaintiff does not set forth any specific

17 subjective complaint that was allegedly ignored, and he does not

18 indicate what portion of Plaintiff's testimony was allegedly

19 misstated. The Court will not guess at what Plaintiff's arguments

20 are; rather, the Court will review the sufficiency of the ALJ's

21 opinion in light of the pertinent legal standards.

22     Plaintiff claims that the record does not support the ALJ's

23 conclusion that Plaintiff's testimony was inconsistent with the

24 record. The ALJ found inconsistent Plaintiff's statement that he

25 helped look after the children with his testimony that he only

26 helped supervise the children who were cared for by a third party

27 (Tr. 25); further, he gave inconsistent reasons for stopping his

28 dishwashing job, testifying that he was fired, but stating to

33

1  others that he quit because he was forgetful or left the
2  position. Plaintiff does not contest the facts as noted by the
3  ALJ. However, Plaintiff argues that his mental condition, lack of
4  proficiency in English, and his reliance upon different
5  interpreters make it unreasonable to conclude that Plaintiff's
6  stories in this regard were significantly inconsistent.

7      The Court notes that the inconsistencies are at a level of
8  detail that one might infer that a depressed person who did not
9  speak significant English might not be capable of appreciating;
10 however, the contrary inference is also possible in each
11 instance. The Court cannot say that the ALJ's drawing of
12 inferences was necessarily unreasonable.

13     However, in any event, the ALJ relied on numerous factors in
14 the course of the opinion. He specifically stated that although
15 Plaintiff alleged severe back pain, he had not been prescribed
16 any narcotic medication, and there was no evidence of any
17 significant spinal abnormalities; thus, he found Plaintiff not to
18 be credible. (Tr. 25.) It is established that an ALJ may rely on
19 the conservative nature of treatment or a lack of treatment in
20 rejecting a claimant's subjective complaint of pain. Johnson v.
21 Shalala 60 F.3d 1428, 1433-34 (9th Cir. 1995). Further, the ALJ
22 noted the lack of evidence of any significant spinal
23 abnormalities. (Tr. 25.) Although lack of medical evidence cannot
24 form the sole basis for discounting pain testimony, it is a
25 factor that the ALJ can consider in his credibility analysis.
26 Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). It is
27 recognized that lack of motivation to obtain consistent treatment
28 for an ailment is powerful evidence of the extent of the

1 subjective symptoms. Id.

2        Finally, the Court notes that the ALJ expressly made

3 credibility findings in two locations in the decision (Tr. 21,

4 24-25). Throughout the opinion, the ALJ mentioned numerous

5 factors pertinent to discounting Plaintiff's credibility,

6 including his running out of hypertension medication or lack of

7 compliance in taking it (Tr. 18, 22), his failure to attend group

8 therapy in 1999 and the resultant closing of his case for lack of

9 attendance (Tr. 19), his lack of compliance with his medications

10 for his mental condition (Tr. 20), his lack of complaints of back

11 pain to Dr. Kaleka (Tr. 21), the lack of objective medical

12 evidence to support the extent and severity of Plaintiff's

13 complaints (Tr. 21), the lack of any significant medical evidence

14 to support Plaintiff's complaints of debilitating back pain[3] as

15 well as the absence of any treatment consistent with chronic pain

16 (Tr. 22), Plaintiff's failure to comply with a treatment

17 recommendation to lose weight (Tr. 22), the lack of objective

18 medical evidence of any etiology for Plaintiff's claimed

19 headaches as well as the lack of any treatment other than Tylenol

20 ES (Tr. 22), the extended lack of treatment for his mental

21 condition (Tr. 23), the improvement admitted by Plaintiff and

22 documented once he began complying with his medication regimen

23 for his mental condition (Tr. 23), Dr. Damania's notation

24 regarding the possibility of manipulative behavior not being

25 ruled out (Tr. 23), Plaintiff's relatively extensive daily

26 activities (Tr. 24), and Plaintiff's lack of apparent distress or

27

28        [3] Plaintiff's physical complaints are not set forth in this decision because Plaintiff has challenged only the portion of the ALJ's opinion that concerns his mental impairment.

1  difficulty at the hearing (Tr. 24).

2       The Court concludes that the ALJ cited clear and convincing

3  reasons for rejecting Plaintiff's subjective complaints to the

4  extent alleged, and that the ALJ's reasons were properly

5  supported by the record and sufficiently specific to allow this

6  Court to conclude that the ALJ rejected the claimant's testimony

7  on permissible grounds and did not arbitrarily discredit

8  Plaintiff's testimony.

9                              DISPOSITION

10      Based on the foregoing, the Court concludes that the ALJ's

11 decision is supported by substantial evidence in the record as a

12 whole and is based on proper legal standards. Accordingly, the

13 Court affirms the administrative decision of the Defendant

14 Commissioner of Social Security and DENIES Plaintiff's social

15 security complaint. The Clerk of the Court IS DIRECTED to enter

16 judgment for Defendant Jo Anne B. Barnhart, Commissioner of

17 Social Security and against Plaintiff Lee Yang.

18

19 IT IS SO ORDERED.

20 **Dated:    November 27, 2006                     /s/ Sandra M. Snyder**
   icido3                          UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28